UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HYSON M. LEBLANC | CIVIL ACTION |
| VERSUS | NO. 25-615 |
| HUNTINGTON INGALLS INCORPORATED, *et al.* | SECTION M (5) |

**ORDER & REASONS**

Before the Court is a motion to dismiss or, in the alternative, a motion for more definite statement filed by defendant Philip Morris USA Inc. ("PM USA").[1] Plaintiffs, Nancy LeBlanc, Darren LeBlanc, and Rhonda LeBlanc (collectively, "Plaintiffs"), individually and as the statutory heirs of decedent Hyson M. LeBlanc ("Mr. LeBlanc"), respond in opposition,[2] and PM USA replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion in part and denies it in part.

## I. BACKGROUND

This is a personal injury case concerning alleged exposure to asbestos. From 1966 to 1993, Mr. LeBlanc worked for various companies in the automotive, marine, and aerospace industries.[4] During his employment, he was allegedly exposed to asbestos and asbestos-containing products.[5] Mr. LeBlanc also regularly smoked cigarettes throughout his employment, having begun smoking around 1965.[6] And in November 2024, he was diagnosed with lung cancer.[7] Mr. LeBlanc filed this suit in state court on January 16, 2025, against various defendants, alleging that his

[1] R. Doc. 163.
[2] R. Doc. 173.
[3] R. Doc. 176.
[4] R. Doc. 144 at 6-7.
[5] *Id.* at 4-5.
[6] *Id.* at 8, 24.
[7] *Id.* at 4.

occupational exposure to asbestos and asbestos-containing products caused or contributed to his cancer.[8] On March 28, 2025, defendant Huntington Ingalls Incorporated removed the case to this Court on the basis of federal-officer jurisdiction under 28 U.S.C. § 1442(a)(1).[9] Mr. LeBlanc passed away on May 18, 2025.[10] Plaintiffs – his surviving spouse and children – filed a suggestion of death and moved to substitute themselves in place of Mr. LeBlanc as the named plaintiffs in the captioned matter,[11] which this Court granted.[12]

Plaintiffs amended the complaint on August 12, 2025, asserting wrongful death and survival action claims against all defendants, adding defendants, and additionally claiming that inadequate warnings regarding cigarettes smoked by Mr. LeBlanc were a contributing factor to his lung cancer and resulting death.[13] Plaintiffs again amended the complaint – their second amended complaint – on July 31, 2026, to add PM USA as a defendant to the cigarette-related claims.[14] Specifically, Plaintiffs claim that PM USA's cigarettes were unreasonably dangerous to normal use when smoked by Mr. LeBlanc and therefore PM USA's products and its failure to warn consumers about the impact of tobacco products on human health contributed to and proximately caused Mr. LeBlanc's cancer.[15]

## II. PENDING MOTION

PM USA argues that this Court should dismiss Plaintiffs' claims against it because they are either preempted by federal law or not pleaded with particularity. First, PM USA asserts that Plaintiffs' claims are preempted by federal law, specifically, the Federal Cigarette Labeling and

---

[8] R. Doc. 2-1 at 6-7.
[9] R. Doc. 2.
[10] R. Doc. 86-1.
[11] R. Docs. 86; 87.
[12] R. Doc. 90.
[13] R. Doc. 92 at 4, 22-25.
[14] R. Doc. 144 at 4, 24-27.
[15] *Id.* at 25-27.

Advertising Act ("FCLAA" or "the Act").[16] Second, PM USA argues that the Louisiana supreme court's decision in *Halphen v. Johns-Manville Sales Corp.*, 484 So. 2d 110 (La. 1986), does not apply to Plaintiffs' unreasonably dangerous *per se* claim. This is because, according to PM USA, *Halphen* only applies to causes of action that accrued before the Louisiana Products Liability Act ("LPLA") was enacted in 1988 but Plaintiffs' claims did not accrue until 2024 when Mr. LeBlanc was diagnosed with cancer.[17] And even if this Court finds that *Halphen* applies, PM USA urges that such claims are also preempted by federal law.[18] Third, PM USA contends that, "[t]o the extent Plaintiffs are attempting to plead a fraud claim against PM USA," they have not done so with particularity.[19] In the alternative to the instant motion to dismiss, PM USA argues that "this Court should order Plaintiffs to file a Third Amended Complaint" because Plaintiffs' claims are "vague and ambiguous."[20]

Unsurprisingly, Plaintiffs take the opposite view on all these points. First, Plaintiffs argue that the FCLAA does not preempt Plaintiffs' claims because Mr. LeBlanc began smoking before the FCLAA was effective.[21] Second, Plaintiffs contend that *Halphen* does apply to their claims because, explain Plaintiffs, Mr. LeBlanc's cause of action "accrued at the time of [his] first significant exposure to cigarette smoke in 1965" and that federal law simply does not preempt *Halphen* strict liability claims.[22] Third, Plaintiffs assert that they are not asserting a fraud claim against PM USA, and so they request that this Court deny PM USA's motion to dismiss in this regard.[23] Finally, Plaintiffs argue that the second amended complaint sufficiently states their

---

[16] R. Doc. 163-1 at 3-13.
[17] *Id.* at 13-14.
[18] *Id.* at 14-16.
[19] *Id.* at 16-17.
[20] *Id.* at 17-21 (quotes at 17).
[21] R. Doc. 173 at 4-9.
[22] *Id.* at 9-14 (quote at 12).
[23] *Id.* at 14-15. Because the parties agree that Plaintiffs have not alleged a claim for fraud, this portion of PM USA's motion to dismiss is dismissed as moot.

claims for negligence and strict liability but that, in the alternative, they "should be permitted leave to amend their operative pleadings."[24]

In reply, PM USA argues that its motion clearly establishes that Plaintiffs' failure-to-warn claim is preempted by the FCLAA, highlighting that Plaintiffs even admit their claims regarding PM USA's post-1969 conduct could be preempted.[25] And PM USA again argues that Plaintiffs cannot maintain an unreasonably dangerous *per se* claim under *Halphen* because Mr. LeBlanc's claims did not accrue until he was diagnosed with cancer in 2024, and even if *Halphen* did apply, such unreasonably dangerous *per se* claims are preempted by the FCLAA.[26] PM USA also points out that Plaintiffs "concede that they have not alleged a fraud claim."[27] PM USA also reasserts that the second amended complaint does not adequately plead a cause of action.[28]

## III. LAW & ANALYSIS

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements

[24] *Id.* at 17, 20 (quote at 20).
[25] R. Doc. 176 at 2-3.
[26] *Id.* at 3-5.
[27] R. Doc. 176 at 1.
[28] *Id.* at 1-3

of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citation modified) (quoting *Twombly*, 550 U.S. at 555, 557).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (citation modified) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's

likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B. Sufficiency of Plaintiffs' Pleadings**

Before determining whether federal law preempts both of Plaintiffs' claims or whether the LPLA applies to Plaintiffs' strict liability claim, the Court will first determine whether the claims satisfy Rule 12(b)(6). In the instant motion, PM USA requests a dismissal of Plaintiffs' claims pursuant to Rule 12(b)(6)[29] or, alternatively, that the Court order Plaintiffs to provide a more definite statement pursuant to Rule 12(e).[30] The Court finds that a more definite statement is

[29] R. Doc. 163-1 at 18.
[30] *Id.* at 17, 21.

warranted as to the strict liability claim but that Plaintiffs have stated a valid negligence claim for failure to warn.

In the instant motion, PM USA argues that Plaintiffs fail to specify a cause of action directed against it.[31] PM USA explains that the second amended complaint "fails to identify a single brand that [Mr. LeBlanc] smoked, the years he smoked, any quit attempts, or how much he smoked,"[32] and it notes that throughout the second amended complaint Plaintiffs even refer to PM USA "as 'the tobacco defendant'" instead of by its name.[33] It also contends that it is left "to guess at Plaintiffs' theories of liability against it" because the "Tobacco Allegations" section of the complaint is "untethered to any cause of action."[34]

In response, Plaintiffs argue that they "sufficiently plead[ed] causes of action against [PM USA] based on negligence and strict liability."[35] As to their negligence claim, Plaintiffs respond with specific allegations from the second amended complaint that they believe plausibly suggest a negligence claim for failure to warn and "more than support an *inference* from which PM USA can adduce [sic] the causes of action against it"[36] – specifically, that LeBlanc began smoking around 1965, that PM USA "had a duty to disclose" information regarding the health hazards of cigarettes to consumers and the public, and that Mr. LeBlanc "smoked [PM USA's] cigarettes which, in connection with his asbestos exposure, caused his lung cancer."[37] Regarding their strict liability claim, Plaintiffs point out that the second amended complaint alleges that PM USA's cigarettes were "*unreasonably dangerous* to normal use" when they were smoked by Mr.

---

[31] *Id.* at 21.
[32] *Id.* at 18.
[33] *Id.*
[34] *Id.*
[35] R. Doc. 173 at 17.
[36] *Id.* (emphasis in original).
[37] *Id.* at 18.

LeBlanc.[38] However, if this Court finds that Plaintiffs have not stated their claims with sufficient particularity, Plaintiffs request "that this Court withhold judgment on [the] motion to dismiss and grant [them] leave to cure any alleged deficiencies in an amended pleading."[39]

In reply, PM USA contends that Plaintiffs' arguments in its opposition cannot substitute for the allegations as they are pleaded in the second amended complaint.[40] And if PM USA must use inferences to decipher Plaintiffs' causes of action in the second amended complaint, then the allegations are insufficient and should be dismissed or, in the alternative, amended.[41]

**1. Negligent Failure to Warn**

In the second amended complaint, Plaintiffs claim that PM USA's failure to warn the public "regarding the addictive nature and adverse health effects of tobacco products" was a proximate cause of Mr. LeBlanc's lung cancer.[42] The second amended complaint alleges that Mr. LeBlanc began smoking around 1965 and that at that time "there were no warnings regarding adverse health effects on cigarette packs or cigarette advertisements."[43] It goes on to explain that because PM USA was aware of the "adverse health effects of tobacco products" at that time, it had a duty to disclose this information to the American public and failed to exercise reasonable care when it did not.[44]

At this stage, a plaintiff is only required to plead "'enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). With respect to claims against product manufacturers, the Fifth Circuit has stated "that the question at

---

[38] *Id.* at 19 (emphasis in original).
[39] *Id.* at 21.
[40] R. Doc. 176 at 1.
[41] *Id.* at 1-2.
[42] R. Doc. 144 at 25.
[43] *Id.* at 24-25.
[44] *Id.* at 24-26 (quote at 25).

the motion to dismiss stage is not whether [the plaintiff] has *proven* the elements to succeed on a products liability claim, or even whether he has made 'detailed factual allegations.' The question is whether [the plaintiff] has plausibly alleged enough information that, *with discovery* he could prove the [manufacturers] are liable." *Flagg v. Stryker Corp.*, 647 F. App'x 314, 319 (5th Cir. 2016) (emphasis in original) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678).

The Court finds, at this juncture at least, that Plaintiffs have stated a claim for negligent failure to warn. Although the section "Tobacco Allegations" does not include the word "negligence" in its title, it directly refers to PM USA's negligence[45] and addresses each requisite element of such a claim.[46] "A manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user." *Halphen*, 484 So. 2d at 115. Therefore, to recover under a failure-to-warn theory, a plaintiff must show that "the manufacturer fail[ed] to adequately warn about a danger related to the way the product is designed" and that the inadequate warning resulted in the plaintiff's injuries. *Id.* at 113-15 (quote at 114-15); *see Hebert v. Brazzel*, 403 So. 2d 1242, 1244 (La. 1981); La. R.S. 9:2800.57 (corresponding LPLA provision). Although the second amended complaint does not specify a specific cigarette label, it does allege that PM USA's products "were smoked by Hyson M. LeBlanc."[47] The complaint also notes that cigarette smoking and asbestos exposure "are both well-established causes of lung cancer," especially when combined.[48] The second amended complaint goes on to allege that PM USA had a "duty to disclose material facts" regarding the harmful effects of smoking cigarettes,[49] and that it failed to provide an adequate

---

[45] *Id.* at 26 ("Plaintiffs are entitled to recover the damages sought in this complaint for *Defendant's negligence*." (emphasis added)).

[46] *See id.* at 24-26

[47] *Id.* at 26.

[48] *Id.* at 8.

[49] *Id.* at 25.

warning when it (1) did not provide any warnings around the time "Mr. LeBlanc began smoking,"[50] (2) repeatedly denied cigarettes' harmful effects "from the 1950s through the 2000s," and (3) failed to place warnings "on their tobacco products,"[51] all "[d]espite … Phillip Morris USA Inc.'s knowledge" of smoking's dangers.[52] Therefore, the second amended complaint contends that PM USA's negligence proximately resulted in Mr. LeBlanc's cancer, who began smoking "around age 20, in roughly 1965" and was "regularly exposed to asbestos."[53]

**2. Strict Liability**

A Rule 12(e) motion may be appropriate "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). A court may require a litigant to provide a more definite statement when a "complaint is 'so excessively vague and ambiguous to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.'" *Omkar, LLC v. AmGUARD Ins. Co.*, 624 F. Supp. 3d 646, 650 (E.D. La. 2022) (quoting *Phillips v. ABB Combustion Eng'g, Inc.*, 2013 WL 3155224, at *2 (E.D. La. June 19, 2013)).

Here, the second amended complaint does not clearly allege strict liability as to PM USA. Plaintiffs concede in their response to the pending motion that their allegations against PM USA are limited to the "Tobacco Allegations" and the "Wrongful Death and Survival Actions" sections.[54] But nowhere in the "Tobacco Allegations" section do Plaintiffs specifically allege that PM USA is strictly liable or that the cigarettes were unreasonably dangerous *per se*. Nor does this section address the requisite elements of such a claim under *Halphen*. Under pre-LPLA law,[55] "[a]

---

[50] *Id.* at 24-25 (quote at 24).
[51] *Id.* at 26.
[52] *Id.* at 24-26 (quote at 25).
[53] *Id.* at 8, 24, 26 (quotes at 24 and 8, respectively).
[54] R. Doc. 173 at 17.
[55] Because a more definite statement is required for Plaintiffs' strict liability claim, the Court declines to determine at this time whether *Halphen* or the LPLA applies to such a claim. The LPLA abolished strict products

product is unreasonably dangerous *per se* if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product." *Halphen*, 484 So. 2d at 114 (emphasis added). Plaintiffs' second amended complaint does not mention this risk-utility analysis at all. The "Tobacco Allegations" section at most states that PM USA's products were "unreasonably dangerous."[56] Plaintiffs do, however, state in the "Wrongful Death and Survival Actions" section that Mr. LeBlanc "smok[ed] cigarettes that were unreasonably dangerous *per se*,"[57] and throughout the complaint they stress the inherent danger of smoking cigarettes, especially when combined with asbestos exposure.[58] Therefore, to remedy the ambiguity in these allegations, the Court finds that a more definite statement is warranted at this time.

**C. Federal Preemption**

PM USA asserts that Plaintiffs' claims are preempted by federal law, specifically, the FCLAA.[59] PM USA argues that because Mr. LeBlanc did not begin smoking until around 1965, it "could not have had any duty to warn [him] prior to 1965."[60] PM USA also contends that all of its cigarettes have contained a federally mandated warning since the Act became effective on January 1, 1966.[61] PM USA maintains that by passing the FCLAA, "Congress established a comprehensive federal scheme for the labeling and advertising of cigarettes in the United States" that preempts state common-law claims.[62] Accordingly, says PM USA, it has "had no such duty

---

liability in Louisiana. *E.g.*, *Gilboy v. Am. Tobacco Co.*, 582 So. 2d 1263, 1264 (La. 1991). So, if the LPLA applies to Plaintiffs' claims, then they cannot recover under a strict-products-liability theory. But if *Halphen* applies to this claim, Plaintiffs would have to satisfy the elements provided in that case, which is why the Court discusses them here.

[56] R. Doc. 144 at 26.

[57] *Id.* at 27 (emphasis added).

[58] *See id.* at 8, 25, 27.

[59] R. Doc. 163-1 at 3-13.

[60] *Id.* at 4.

[61] *Id.*

[62] *Id.* at 6-8 (quote at 6).

to warn 'the American public, including Mr. LeBlanc'" since 1969.[63] Furthermore, argues PM USA, Plaintiffs' claims meet each element identified by the United States Supreme Court in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992), for determining that a state-law claim is preempted by the Act.[64]

Plaintiffs respond that the FCLAA does not preempt Plaintiffs' claims, regardless of when Mr. LeBlanc's alleged exposure occurred. Plaintiffs first argue that "their failure to warn claims regarding Mr. Le[B]lanc's pre-1966 exposure to PM USA's cigarette smoke are not preempted under federal law" because the second amended complaint specifically alleges that Mr. LeBlanc began smoking around 1965, the year before the FCLAA became effective.[65] Plaintiffs also contend that the FCLAA does not preempt their claims based on Mr. LeBlanc's smoking from 1966 to 1969 because, during that period, the Act "preempted only positive enactments by legislatures or administrative agencies mandating warning labels but did not preempt state-law common law damages actions, such as the action brought … in this case."[66] And as to Mr. LeBlanc's exposure from 1969 on, Plaintiffs argue that PM USA failed to meet its burden to establish federal preemption of these claims because PM USA did not identify "a 'requirement or prohibition' that is '*imposed* under state law.'"[67]

The FCLAA was enacted by Congress in 1965 as "a response to a growing awareness of the health threat posed by cigarettes." *Pennington v. Vistron Corp.*, 876 F.2d 414, 417 (5th Cir. 1989). The Act went into effect on January 1, 1966, and "dictates the exact warning to be placed on every package of cigarettes sold in the United States." *Id.* at 418. Congress's purpose for

---

[63] *Id.* at 4 (quoting R. Doc. 144 at 25).
[64] *Id.* at 9-13.
[65] R. Doc. 173 at 5-6.
[66] *Id.* at 6.
[67] *Id.* at 7-9 (quote at 8) (emphasis in original) (quoting R. Doc. 163-1 at 9).

enacting the FCLAA was twofold: (1) to inform the public of the adverse health effects of cigarette smoking and (2) to "protect[] the national economy from the burden imposed by diverse, nonuniform, and confusing cigarette labeling and advertising regulations." *Cipollone*, 505 U.S. at 514. Consistent with the second purpose, the FCLAA contained a preemption provision, which stated in relevant part:

> (a) No statement relating to smoking and health, other than the statement required by section 4 of this Act, shall be required on any cigarette package.
>
> (b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

Pub. L. No. 89-92, § 5(a)-(b), 79 Stat. 282, 283 (1965). Congress subsequently enacted the Public Health Cigarette Smoking Act of 1969, which, *inter alia*, broadened the FCLAA's state-preemption provision. *Cipollone*, 505 U.S. at 515. Since July 1, 1969, the preemption provision has declared the following regarding state laws and regulations:

> No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

Pub. L. No. 91-222, sec. 2, § 5, 84 Stat. 87, 88 (codified as amended at 15 U.S.C. § 1334(b) (2009)); *id.* sec. 3, 84 Stat. at 90 ("Section 5 of the amendment made by this Act shall take effect as of July 1, 1969.").

In *Cipollone*, the Supreme Court analyzed the text of the two provisions and held that from 1966 to 1969, the FCLAA preempted only *positive* enactments and regulations but that since July 1969, the Act has preempted some common-law claims as well. 505 U.S. at 517-18, 522-24.[68]

[68] Although only a plurality of the Justices joined the portion of the opinion which explained that the amended provision extends to some post-1969 common-law claims, Justice Scalia, "in his opinion concurring in part and dissenting in part, … joined by Justice Thomas, stated that he agreed with" the plurality that the 1969 provision may apply to certain state common-law claims. *MacDonald v. Monsanto Co.*, 27 F.3d 1021, 1024 n.1 (5th Cir. 1994) (citing *Cipollone*, 505 U.S. at 548-49 (Scalia, J., concurring in part)). The Fifth Circuit therefore adopted the *Cipollone*

Plaintiffs seem to present their negligent failure-to-warn claim as one based in state common law,[69] which PM USA does not dispute.[70] Whether the FCLAA preempts Plaintiffs' negligent failure-to-warn claim depends on which of the two provisions applies, and this in turn depends on *when* PM USA failed to provide an adequate warning. *See id* at 518, 522-24; *Pennington*, 876 F.2d at 421 n.8, 424. Because Plaintiffs challenge PM USA's advertising and promotion practices from 1965 on,[71] the Court must address the impact each provision has on Plaintiffs' claims, if any.

On the one hand, PM USA fails to establish that the FCLAA preempts Plaintiffs' pre-1969 negligent failure-to-warn claims. The FCLAA preempts only those claims arising from conduct that occurred after its effective date. *Pennington*, 876 F.2d at 424 (explaining that a "contention that the tobacco companies failed to provide adequate warnings prior to 1966" was not preempted). Therefore, Plaintiffs' claim for injury arising from Mr. LeBlanc's smoking in 1965, "before the effective date of the Act[,] is, of course, not preempted." *Id.* at 421 n.8. And the FCLAA still does not preempt *common-law* claims arising from conduct that occurred between January 1, 1966, and July 1, 1969. *Cipollone*, 505 U.S. at 519-20. Thus, because Plaintiffs' negligence claim is presented as one based in common law, and PM USA has not argued otherwise, the Act also does not preempt this claim as it pertains to PM USA's alleged failure to warn from 1966 through July 1, 1969.

But, on the other hand, "insofar as [Plaintiffs'] claims under [a] failure-to-warn theory require a showing that [PM USA's] post-1969 advertising or promotions should have included additional, or more clearly stated, warnings, those claims *are* pre-empted." *Id.* at 524 (emphasis

---

test because the plurality's opinion that the 1969 provision preempted certain common-law claims "can fairly be said to constitute the view of the Court because six members of the Court concurred in that conclusion." *Id.*

[69] *See* R. Doc. 144 at 25-27.

[70] *See* R. Docs. 163-1 at 8-10; 176 at 2.

[71] *See* R. Doc. 144 at 24-26.

added). To determine whether the FCLAA preempts common-law claims arising from a defendant's post-1969 conduct, the court must consider "whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health ... imposed under State law with respect to ... advertising or promotion,' giving that clause a fair but narrow reading." *Id.* (quoting § 5(b) of the amendment to the FCLAA codified at 15 U.S.C. § 1334(b)); *see also Brown v. Brown & Williamson Tobacco Co.*, 479 F.3d 383, 389 (5th Cir. 2007) (explaining that the Fifth Circuit "adopted the *Cipollone* test"), *abrogated on other grounds by Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008). The parties separate this inquiry into four elements.[72] The Court briefly addresses each element in turn.

*Requirement or prohibition*: In the second amended complaint, Plaintiffs allege that PM USA "had a duty to disclose" and "to timely and adequately warn" consumers, such as Mr. LeBlanc, about the health consequences of smoking cigarettes and to place such warnings on "any and all packing of tobacco products sold by them."[73] Because Plaintiffs' argument is "premised on the existence of a legal duty, … it is difficult to say that such actions do not impose 'requirements or prohibitions.'" *Cipollone*, 505 U.S. at 522 (plurality opinion). Further, if Plaintiffs could recover damages for proving that PM USA's advertisements and product labels were inadequate, "the undeniable practical effect would be that state law *requires* additional labeling standards not mandated by [the FCLAA]." *Cf. MacDonald*, 27 F.3d at 1025 (addressing a different, but similar, federal statute). Accordingly, the first element is satisfied.

---

[72] R. Docs. 163-1 at 9; 173 at 8; 176 at 2.
[73] R. Doc. 144 at 24-26.

*Based on smoking and health*: The crux of Plaintiffs' failure-to-warn argument is that Mr. LeBlanc developed cancer as a proximate result of PM USA's failure to warn consumers about the *health* hazards of *smoking* cigarettes.[74] Thus, the second element is satisfied.

*Imposed under state law*: Both parties concede that the failure-to-warn claim asserted here is one based in state common law.[75] The Fifth Circuit has adopted the *Cipollone* plurality's reasoning that the phrase "state law," as it is used in the 1969 provision, includes state common law, *MacDonald*, 27 F.3d at 1024, so the third element is also satisfied.

*With respect to advertising or promotion of cigarettes*: The *Cipollone* plurality distinguished claims based on advertising and promotion, which are preempted, from those that are not, thus demonstrating that not all failure-to-warn claims are automatically preempted. *See* 505 U.S. at 524-25 (plurality opinion) ("The Act does not, however, pre-empt petitioner's claims that rely solely on respondents' testing or research practices or other actions unrelated to advertising or promotion."). The Fifth Circuit has held that "any state law claim that would *require* additional communication between companies and consumers is pre-empted by the [FCLAA]." *Brown*, 479 F.3d at 394 (emphasis in original). Plaintiffs' failure-to-warn theory contemplates that PM USA did not provide adequate warnings on their products or to the public,[76] which is a claim that the Supreme Court, the Fifth Circuit, and Louisiana courts have recognized is preempted by the FCLAA and other federal laws with similar preemption provisions. *See Cipollone*, 505 U.S. at 524 (plurality opinion) ("[I]nsofar as claims under [a] failure-to-warn theory require a showing that respondents' post-1969 advertising or promotions should have included additional, or more clearly stated, warnings, those claims are pre-empted."); *Allgood v. R.J. Reynolds Tobacco Co.*,

---

[74] *Id.* at 25-26.
[75] *See* R. Docs. 163-1 at 8-10; 173 at 4-8; 176 at 2.
[76] R. Doc. 144 at 25-26.

80 F.3d 168, 171 (5th Cir. 1996) ("To the extent that plaintiffs' claims are based on … a failure to warn after 1969, they are preempted by the … Act."); *Hopkins v. Am. Cyanamid Co.*, 666 So. 2d 615, 621 (La. 1996) (adopting *Cipollone*'s analysis to hold Federal Insecticide, Fungicide, and Rodent Act preempts "all state law claims premised on failure to warn regarding EPA approved [pesticides]"). Further, Plaintiffs' response to the instant motion does not challenge PM USA's assertion that their claim relates to "advertising and promotion."[77]

Therefore, because all four elements of the *Cipollone* test are satisfied, the Plaintiffs' claims regarding PM USA's failure to warn after July 1, 1969, are preempted by the FCLAA.

**3. CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that PM USA's motion to dismiss (R. Doc. 163) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the motion is GRANTED IN PART to the extent Plaintiffs' negligence claims assert that PM USA's advertisements, promotions, or labels should have included additional or more clearly stated warnings after July 1, 1969, and any such claim is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the motion is DENIED IN PART to the extent Plaintiffs' negligence claims assert that PM USA's advertisements, promotions, or labels should have included additional or more clearly stated warnings before July 1, 1969.

IT IS FURTHER ORDERED that the motion is DENIED AS MOOT to the extent it argues that Plaintiffs accuse PM USA of fraud because Plaintiffs agree that they have not alleged any such claim.

[77] *See* R. Docs. 163-1 at 11; 173 at 7-9.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 12(e), Plaintiffs must provide a more definite statement by filing, within 14 days of this order, an amended complaint setting out more factual detail as to the claim of strict liability against PM USA.

New Orleans, Louisiana, this 5th day of November, 2026.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE